THE STATE v. WILLIAM HAGAN.

CONTINUANCE *Ought to have been Granted.* While continuances are largely within the discretion of the trial court, yet when defendant, at the term at which the information is filed, shows by his affidavit that there is material testimony which he has been unable to procure, and that he has used reasonable diligence since his arrest to ascertain and procure such testimony, considering the circumstances in which he has been placed and the means at his disposal, and that there is a probability of obtaining such testimony if a continuance be granted, it is error to refuse such continuance.

*Appeal from Wilson District Court.*

AT the February Term, 1879, of the district court, *Hagan* was convicted of grand larceny, and from such conviction he now appeals to this court.

*S. S. Kirkpatrick & Bro.*, for appellant.

*T. J. Hudson*, for The State.

The opinion of the court was delivered by

BREWER, J.: Defendant was convicted of grand larceny in the stealing of a horse, and from such conviction appeals to this court. One question only requires notice, all other matters having been covered by the opinion delivered in the case of *The State v. Cole*, ante, p. 474. That question is one of continuance. The facts are these: Defendant moved for a continuance at the term at which the information was filed, on the ground of absent testimony. This testimony was of witnesses to show that he purchased the horse which he was charged to have stolen, and also to prove previous good character. The testimony was unquestionably material, and if due diligence was shown he ought to have received a continuance. He says in his affidavit that he was arrested on or about November 1st, and committed to the jail of Wilson county, and that he then employed counsel to defend him; that he remained in said jail until Dec. 3d, when he was removed to the Franklin county jail, where he remained until

the commencement of the term on the succeeding February, when he was returned to Wilson county jail. The information was filed February 7th, and the trial had February 15th. During the time of his confinement in Franklin county, he had no opportunity to consult with his counsel, and was destitute of means. Since the filing of the information he has applied for and received a commission to take the testimony of the absent witnesses, some of whom reside in Missouri and some in Nebraska. That immediately after his arrest he wrote to a party named in Nebraska where he resided, asking him to ascertain the names of parties who would testify to his good character, and also the name of some one to take the depositions; and also that he wrote to a party named at Joplin, Mo., requesting him to go to Baxter Springs, in the vicinity of which place he claimed to have bought the horse, and make inquiry for the person of whom he claimed to have made the purchase. That he also gave to his attorney the name of the last person addressed, and all information he possessed as to his residence and probable whereabouts; and that, as he is informed and believes, his attorney wrote several letters to parties making inquiry about said witness, but without receiving any information therefrom. That he himself received no answers to the letters he had written, and that within one week after his removal to Franklin county he wrote to the sheriff of Gage county, Nebraska, who he believed was acquainted with the party to whom he had written at Joplin, and to other parties in Nebraska, to ascertain the whereabouts of said party, and that within two weeks thereafter he received a letter from said sheriff stating that he did not exactly know said party's address, but believed he was at the lead mines in Kansas. That immediately he addressed a letter to said party at Empire City, Kansas, and soon after another to him at Joplin, Missouri, requesting him to make the inquiries previously named. That within two weeks of the sitting of the court, he received a letter from said party stating that one John N. Burton, living near West Point, Missouri, was the man who

sold defendant the horse, and that one George Skaggs, living near Joplin, would testify to material facts as specified, corroborating the sale. Expecting to be returned to Wilson county in a few days, he did not communicate this information to his attorney until he was brought down to Wilson county for trial, as before stated.

We think this was a sufficient showing of diligence. The defendant was in jail, and without means. He had to rely upon letters and friends for information. He wrote without delay, and continued to write. He could not compel answers, and he could not go himself to make inquiries. His situation was very different from that of one out on bail and able to go in search of testimony, or of one with ample means to employ assistants. Reasonable diligence was of course essential; but what more could defendant do? Counsel for the state say that the whole defense was a sham, and it was apparent to the district court. But how could the court say from the affidavit that it was a sham, or that the efforts of defendant were not in good faith? The defendant swears that the witnesses would testify to the facts, and that he believes those facts to be true. There was nothing impossible or even improbable in such testimony, and the defendant ought to have had an opportunity to obtain it if possible. Grant that he might have commenced taking depositions at the very day of his arrest, yet he did not know where these witnesses were, and not until just before the convening of the court and the filing of the information did he discover where they were. The defendant was presumed to be innocent. His efforts were apparently in good faith, and the testimony he sought was very material. It will not do to say that such testimony was false, or his efforts to obtain it a mere pretense. If the witnesses sought should testify as stated, it will be for the jury to say whether such testimony is true. It cannot be pronounced false in advance, and a party should not be held lacking in diligence who uses all the means at his disposal to obtain his testimony.

For this error the judgment will be reversed, and the case remanded for a new trial. The defendant will be returned from the penitentiary to the jail of Wilson county, to abide the further order of the district court of that county.

All the Justices concurring.