## LIMB v. LIMB.

No. 31716. March 20, 1945.

*156 P. 2d 1013.*

Mauntel & Spellman, of Alva, and D. P. Parker, of Buffalo, for plaintiff in error.

M. A. Holcomb, of Buffalo, for defendant in error.

PER CURIAM. This is an appeal from the district court of Harper county, Okla., granting a divorce. The action was brought by John C. Limb against his wife, Ethel E. Limb. The plaintiff in his petition for divorce alleges extreme cruelty and abandonment. He also alleges that some time prior to the institution of the action there was a property settlement executed and signed by both parties in which they agreed to settle all property rights. Defendant filed an answer and cross-petition to this petition in which she denies specifically the allegations of extreme cruelty and abandonment made by plaintiff, and alleges that her signature to the property settlement was procured by fraud practiced upon her by the plaintiff. In her cross-petition she prays for a divorce, and as grounds therefor alleges extreme cruelty and abandonment, and prays for divorce, for cancellation of the property settlement, and prays that she be decreed an equal division with her husband of all property accumulated by them during the marriage.

The trial court at the conclusion of the evidence granted a divorce to the plaintiff, sustained and approved the property agreement, and denied defendant any relief under her cross-petition.

Defendant has appealed from this judgment. In her petition in error she assigns numerous errors, but in the brief stresses only two assignments, the first assignment being that the evidence is wholly insufficient to support a judgment for plaintiff. While the evidence on the question of extreme cruelty is very meager and unsatisfactory, and probably in itself insufficient upon which to grant a divorce, the evi-

dence, we think, clearly sustains the court in granting plaintiff the divorce on the ground of abandonment. The evidence on this question discloses that the parties were married on the 7th day of July, 1901, at Deere Creek, Okla. Several years thereafter they moved to a farm in Harper county, Okla., near Kibby, consisting of 160 acres of land which plaintiff had homesteaded. Plaintiff thereafter acquired an additional 160 acres. The parties lived on this farm until the latter part of 1923, when they sold portions of their personal property and moved to Missouri. Upon arrival in Missouri plaintiff rented a farm of 120 acres from his brother which he farmed for two years. During the time he lived in Missouri the estate of his deceased brother was settled, from which he inherited the sum of $2,500. Shortly after the settlement of this estate plaintiff expressed a desire to return to his farm in Harper county, Okla. Defendant protested and refused to return with the plaintiff unless he agreed to build two additional rooms to the house on the farm in Oklahoma. Plaintiff declined to do this and a few days thereafter returned to Oklahoma. The evidence discloses that the house built on the farm by plaintiff was comfortable, livable, and compared favorably with farm houses generally in that community. There was no objection raised by defendant that the house was not livable. Her only complaint was that it was too small to accommodate the family.

Defendant filed an action in the courts of Missouri for divorce, whereupon plaintiff returned to Missouri and the parties entered into a property settlement on August 12, 1926, and the divorce action was dismissed. Plaintiff then returned to his home in Oklahoma, defendant remaining in Missouri with her son on the farm which was previously rented by her husband. Defendant continued to live in Missouri until some time in 1930, when she moved to Tulsa, Okla., where she lived with and took care of her aged father and two minor children. All this time she refused to live with the plaintiff.

Ordinarily, the husband, being the provider, has the privilege of selecting the domicile, and in the absence of strong circumstances to the contrary, it is generally the duty of the wife to live with the husband at such domicile. Stieber v. Stieber, 82 Okla. 205, 200 P. 141; De Vry v. De Vry, 46 Okla. 254, 148 P. 840. We think this evidence sufficient to show an abandonment on the part of the defendant and sufficient upon which to sustain the conclusion of the trial court granting plaintiff the divorce on the ground of abandonment.

Since defendant without sufficient cause or excuse refused longer to live with plaintiff on the farm in Oklahoma, in our opinion she has no just cause for challenging the judgment of the court granting a divorce on the ground of abandonment.

Defendant further insists that the trial court erred in approving the property settlement and in refusing to grant her a division of the property accumulated during marriage.

The evidence in regard to the property settlement discloses, substantially, the following facts: When defendant's divorce action filed in Missouri was called for trial the trial court suggested that the parties endeavor to agree upon a property settlement. At this suggestion both parties and their attorneys held a conference, and at this conference a property settlement was agreed upon. This agreement, however, was not reduced to writing until the next day. As before stated, this settlement is challenged upon the ground that defendant was induced to sign the same by fraud practiced upon her by the plaintiff. On the question of fraud defendant testified that the agreement as signed by her was not the agreement entered into; that after the agreement was reduced to writing plaintiff and his attorney came to her home and that plaintiff's attorney entered the house and requested that she sign the instrument; that she, at the time, did not examine the instrument as closely as she should have because plaintiff's attorney urged a quick decision for the reason

that a storm was brewing and that in order to avoid the storm he desired to return as quickly as possible. She testified, however, that she did examine the instrument that evening and stated that she then discovered that it did not contain the agreement as entered into the day previous. The agreement, among other things, provides that in consideration of the setting apart by plaintiff and transferring to defendant certain personal property consisting of livestock, farm implements, and household goods of the reasonable value of $2,000, and in consideration of the payment to her by plaintiff of the sum of $200 a year for a term of three years to begin August 15, 1926, until three payments have been made, then to pay for two years the sum of $133.33 and thereafter to pay for a period of four years the sum of $75, defendant was to release all claim and interest in the land in Harper county, Okla., and all other personal property and all other property thereafter acquired by plaintiff. At the time of the execution of this instrument three of the children of the parties were still minors, one of the age of 16, one 14, and the other 9 years of age. The cash payments under the agreement were to be made for the support of plaintiff and these minor children. Defendant testified that in the oral agreement there was nothing said about releasing her right, claim, or interest in the land and other property of plaintiff, and that if she had known at the time she signed the instrument that it contained such provision, she would not have signed the same. Defendant, however, admits that she did receive the property mentioned in the agreement and admits that she knew an appraised value of $2,000 was placed on this property. She states, however, that it was her understanding that there was an intention to sell the property, and that for that reason the appraisement and valuation was placed upon the same. She admits that she took possession of this property and used the same on the farm rented by her in Missouri for a period of four years, after which time she sold the property to her son and moved to Tulsa, Okla. She also

admits that upon the execution of the agreement and before returning to Oklahoma plaintiff paid her a part of the first installment of alimony allowed and shortly thereafter paid her the balance of such installment, and that all installments have been paid. She also admits that she at no time complained to the plaintiff that the agreement she signed was not the real agreement entered into. She made no complaint to her son who was living with her on the farm and made no protest whatever until the 13th day of May, 1929, when she consulted a lawyer in Missouri in regard to the agreement. The lawyer suggested that she prepare an affidavit and file the same with the county clerk of Harper county stating that she still claimed an interest in the land in Harper county and that she was induced to sign a property settlement releasing all her right and interest in and to the land by fraud. This affidavit was drawn, signed and filed in the office of the county clerk of Harper county. Defendant in this respect further testified that she had not notified plaintiff of the filing of this instrument; that she had been corresponding with him in regard to the collection of past due installments of alimony and in such correspondence she at no time advised the plaintiff that she was dissatisfied with the agreement and at no time advised him of the filing of this affidavit. The evidence shows that plaintiff did not discover the filing of this affidavit until after the action for divorce was instituted in Harper county. The action was filed in June, 1943. The court by its judgment canceled this affidavit as a cloud upon plaintiff's title to the land, and vested title in and to the same in plaintiff.

The evidence further discloses that defendant's attorney was present in the conference when this agreement was entered into. The testimony of the plaintiff is that the property agreement was reduced to writing by defendant's attorney. Defendant testified that she does not know who drew the agreement, but states that the plaintiff told her it was drawn by his attorney. Defendant

did not testify that she had not read the agreement before she signed it or that she was in any manner prevented from reading it; she simply testified that she had not examined it as closely as she should have. We think this evidence is wholly insufficient to establish that her signature was procured by fraud.

Defendant also contends that the property settlement is unfair and inequitable.

In this connection the evidence discloses that the only other property plaintiff had of any value at the time this property settlement was executed and at the time he was granted a divorce by the district court of Harper county was 320 acres of land in Harper county. This land, plaintiff testified, had a value of about $3,000. Defendant testified that it had a value of about $5,000.

Under these circumstances the defendant's argument in this connection is plausible and seriously challenges our attention, but upon consideration of all the facts and circumstances disclosed by the entire record we cannot say that the judgment in this respect is clearly against the weight of the evidence.

The judgment is therefore affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY, BAYLESS, WELCH, CORN, and ARNOLD, JJ., concur.