1999 OK CIV APP 15

**Virginia I. HENDRICK,**
**Plaintiff/Appellant,**

v.

**Thomas K. HENDRICK,**
**Defendant/Appellee.**

No. 88,732.

Court of Civil Appeals of Oklahoma,
Division No. 1.

Feb. 6, 1998.

Rehearing Denied April 17, 1998.

Certiorari Dismissed Feb. 8, 1999.

Carolyn S. Thompson, Oklahoma City,
Oklahoma, For Appellant.

Joe E. Edwards, Ricki V. Sonders, Oklahoma City, Oklahoma, For Appellee.

## MEMORANDUM OPINION

CARL B. JONES, Vice Chief Judge:

¶1 Wife appeals from a divorce decree that honored an Antenuptial Agreement and two post-nuptial modifications of the agreement.

¶2 The parties were married in 1985. Prior to their marriage they executed an Antenuptial Agreement which provided that in the event of divorce Wife "... shall make no claim and expressly waives and relinquishes all rights, interests, claims, or allow-

ances, in law or in equity given, in and to the real and personal estate of Hendrick [husband] which she might or could be entitled to but for this agreement, . . . ." except in the event of such divorce Wife shall be entitled to receive property having a fair market value of $1,000,000.00 after 5 or more years of marriage.

¶3 In 1989, Husband began to make a series of sizable conveyances to Wife. These are referred to as the "1989 gifts". These were comprised of bonds and corporate stock valued at approximately $5,000,000.00.

¶4 On May 14, 1990, the "First Amendment" to the Antenuptial Agreement was entered into. It provides that Husband had made substantial gifts to Wife intended to discharge Husband's obligations under the Antenuptial Agreement. Wife acknowledged receipt of the gifts and in consideration thereof released Husband of his obligations under the Antenuptial Agreement and relinquished all rights to which she might be entitled in or to Husband's estate in the event of a divorce.

¶5 The "Second Amendment" to the Antenuptial Agreement was entered into on June 22, 1990, and stated that if the gifts referenced in the "First Amendment" had a value of more than $1,000,000.00 at the date of divorce, then Wife shall only be entitled to retain such gifts with a value of $1,000,000.00. She would be obligated to transfer to Husband that part of those gifts whose value exceeded $1,000,000.00. Alternatively, Wife would be allowed to transfer all the gifts back to Husband and he, in return, would pay her $1,000,000.00 cash.

¶6 Wife filed for divorce in February, 1995. As provided in the "Second Amendment", Husband tendered $1,000,000.00 to wife in exchange for the return of the 1989 gifts. Wife refused to perform pursuant to the "Second Amendment".

¶7 The trial court made specific findings that the Antenuptial Agreement and the First and Second Amendments to that agreement were valid. Division of property was then ordered consistent with the Second Amendment to the Antenuptial Agreement.

¶8 On appeal, Wife contends the Amendments to the Antenuptial Agreement are void and unenforceable as a matter of law; that Husband failed to meet his burden of proof to establish the validity of the Amendments; that the Second Amendment was not supported by the necessary consideration; that if the Second Amendment is determined to be enforceable, Husband is only entitled to a return of the "1989 gifts"; and, that Husband should not have been awarded the appreciation of the 1989 gifts.

## ENFORCEABILITY OF THE ANTENUPTIAL AGREEMENT AND AMENDMENTS

¶9 Marriage and divorce are creatures of statute with the State having exclusive control over the establishment, maintenance and termination of the marital relationship. 43 O.S.1991 § 1; *Williams v. Williams*, 1975 OK 163, 543 P.2d 1401, 1403. The right of each spouse to share in the marital estate in the event of divorce is one of those statutory rights. 43 O.S. Supp., 1992 § 121. Such rights cannot be extinguished except by statute. 43 O.S.1991 § 1. The only statutory method to affect the statutory right to a just and reasonable division of marital property in a divorce is a valid, written antenuptial contract. *Id.* Husband's brief concedes this.

¶10 There is no question that there was a valid, written antenuptial contract between the parties. Husband and Wife then attempted postnuptially to amend that contract. Husband contends these subsequent agreements were permitted by statute[1] and case law[2]. Wife contends the "Amendments" to the Antenuptial Agreement were new agreements entered into postnuptially, were not permitted by statute and were thus unenforceable in the divorce court.

¶11 First, it seems obvious to this Court, that an antenuptial agreement which has amended, modified or superseded post-

---

1. 43 O.S.1991 § 204.

2. *Boyer v. Boyer,* 1996 OK CIV APP 94, 925 P.2d 82.

nuptially is no longer an antenuptial agreement. An "antenuptial agreement" by definition is one entered into before marriage and in contemplation of marriage. *Hudson v. Hudson,* 1960 OK 70, 350 P.2d 596; *In re Cobb's Estate,* 1956 OK 299, 305 P.2d 1028; *Black's Law Dictionary,* 19(4th Ed. Rev. 1975). Calling the new agreement an "Amendment" to the Antenuptial Agreement does not alter its true nature. It is no longer an antenuptial agreement—but rather a postnuptial agreement.

¶ 12 Second, 43 O.S. § 121 is the specific statute involved here. It mandates a just and reasonable division of the marital property in the event of divorce, subject to one thing—a valid, written **antenuptial** contract. Title 43 O.S. § 204, advanced by Husband as the statutory basis permitting the postnuptial agreement, allows husbands and wives to enter into transactions with each other respecting property. In other words, this allows one spouse to convey to the other, by gift or for consideration, his or her interest in marital property, prior to a divorce or death. Such conveyance takes that property out of the marital estate, leaving it as the separate property of the grantee spouse. An antenuptial agreement (or attempted postnuptial agreement), however, is only effective upon the contingency of divorce and/or death and directly affects the marital estate and the statutory rights to marital property that vest upon the occurrence of those contingencies. Husband's reliance on '204 is misplaced. Postnuptial agreements are not authorized by Oklahoma Statutes.

¶ 13 Third, Husband relies on the case of *Boyer v. Boyer,* 1996 OK CIV APP 94, 925 P.2d 82 as authority allowing postnuptial modification of an antenuptial agreement. Boyer does, in fact, hold that an antenuptial agreement may be modified postnuptially. It reasons that such modification is allowed under the authority of 43 O.S. § 204 and under *Manhart v. Manhart,* 1986 OK 12, 725 P.2d 1234. Section 204 is discussed above. *Manhart* did not involve an antenuptial or postnuptial agreement. It involved in interspousal conveyance of property which is permitted by '204 and which takes that property out of the marital estate. In *Manhart,* the wife conveyed her interest in some jointly acquired marital property to her husband. That property became husband's separate property and was not subject to equitable division when the parties later divorced. *Manhart* is not authority for the proposition that an antenuptial agreement may be modified postnuptially.

¶ 14 *Boyer* also concludes that because an antenuptial agreement may be revoked or rescinded by the parties, "... it follows that a postnuptial modification of a property provision is also permissible." This is a legal *non sequitur.* Our Supreme Court has recognized that an antenuptial agreement may be revoked if both parties freely consent. *Dean v. Jelsma,* 1957 OK 163, 316 P.2d 599, overruled on other grounds, *Davis v. Davis,* 1975 OK 83, 536 P.2d 915. It simply does not follow, however, that because rescission of an antenuptial contract is permissible, a postnuptial agreement (whether starting anew or modifying an earlier agreement) must also be permissible.

¶ 15 The result in *Boyer* is perhaps understandable considering there was no mention therein of 43 O.S. § 121. There is no way to reconcile *Boyer* with § 121, the controlling statute. *Boyer* is inconsistent with this Court's interpretation of § 121 and we must therefore follow the statute.

¶ 16 Fourth, this situation is analogous to a postnuptial attempt to contract away a spouse's right to take under the "forced heir statute", 84 O.S.1991 § 44. That statute allows a surviving spouse the option to inherit from the deceased spouse pursuant to the law of intestate succession, 84 O.S.1991 § 213, if the deceased spouse's will bequeaths less than the survivor would be entitled to under intestacy. Section 44(A) provides that, "Every estate in property may be disposed of by will; provided however, that a will shall be subservient to any antenuptial marriage contract in writing; ..." Our Supreme Court has held that although the spouse's right to take under the law rather than under the will can be affected by an antenuptial agreement, a **postnuptial** agreement attempting to limit or waive that right is invalid and unenforceable. *Crane v. Howard,* 1951 OK ——, 206 Okla. 278, 243 P.2d 998; see also *In re*

**1074**

*Blaydes' Estate,* 1950 OK ——, 202 Okla. 558, 216 P.2d 277 and *Atkinson v. Barr,* 1967 OK 103, 428 P.2d 316.

¶ 17  Crane quotes with approval *Smith, et al. v. Johnson, et al.,* 144 Neb. 769, 14 N.W.2d 424, referring to its similar statute: "It will be observed that section 30–106 only refers to a contract before marriage and is silent as to a postnuptial contract between husband and wife. This silence we think is significant. Had the legislature desired to change the common law rule, it would have been a simple matter to have included post-nuptial contracts." The same can be said of 43 O.S. § 121. If the Legislature had intended to make the division of marital property subject to postnuptial agreements it could certainly have done so. As it stands, however, § 121 is clear and unambiguous.

### STATUS OF THE ANTENUPTIAL AGREEMENT

¶ 18  Since the postnuptial agreements are not enforceable in the divorce court, a question remains as to the status of the original Antenuptial Agreement. The trial court found the Agreement to be valid and neither side argues that it is not. Neither is it argued that the Antenuptial Agreement was rescinded or canceled by one or both of the Amendments. We find no reason to take issue with the trial court's finding of the Antenuptial Agreement's validity. On remand, however, the trial court must consider whether, or to what extent, Husband discharged his obligation under the Antenuptial Agreement by the "1989 gifts".

¶ 19  The Decree of Divorce is reversed and this cause is remanded for further proceedings consistent with this opinion. We find it unnecessary to address Wife's other propositions of error.

¶ 20  REVERSED AND REMANDED.

JOPLIN, P.J. and GARRETT, J., concur.

